## Jones, Appellant, v. Boulter.

*School law—Transportation of pupils—Failure to provide transportation.*

A petition filed under Section 217 of the Act of May 18, 1911, P. L. 309, known as the School Code, to remove the school directors of a township for failure to furnish transportation to pupils who reside more than one and one-half miles from the nearest school house, will be dismissed, where it appears that the school district in which the petitioners resided was consolidated with an adjoining school district during the year 1901, and by another board of school directors than the board sought to be removed, and that no change affecting this district had been made by the later board, or since the Act of 1911 was passed.

Argued March 1, 1915.   Appeal, No. 8, March T., 1915, by plaintiff, from order of C. P. Susquehanna Co., Nov. T., 1913, No. 149, dismissing petition to remove school directors in case of Henry D. Jones, et al., v. Edward Boulter, et al., directors of Clifford School District.   Before Rice, P. J., Orlady, Head, Porter, Henderson, Kephart and Trexler, JJ.   Affirmed.

Petition to dismiss school directors.

Little, P. J., filed the following opinion:

This proceeding was instituted under Section 217 of the Act of May eighteenth, 1911, known as the "School Code."

A petition was presented to the court signed by more than ten residents of the school district praying for the removal of the board of school directors as is provided in this section for refusal or neglect to transport the children of said Henry D. Jones and James E. Jenkins, being of school age, to the nearest elementary school in said school district.   Upon presentation of the petition a rule was granted to show cause why the board of school directors should not be removed as prayed for, and upon return day of the rule the respective parties were heard in open court.

From the testimony it appeared that Henry D. Jones has one child of school age and James E. Jenkins four, that both parents reside a distance of more than one and one-half miles from a public school in the school district of Clifford Township, and a distance of more than one and one-half miles from any public school maintained in an adjoining district.   It further appeared from the testimony that a former board of school directors in Clifford Township school district during the year 1901 closed the public school theretofore maintained in the school district where Jones and Jenkins now reside, and this school district was consolidated with the Welsh Hill school district adjoining, and a new school house was erected at Welsh Hill.   After this consolidation was con-

summated the school children residing in the district closed were expected to attend school in the Welsh Hill school district. The school directors have transported the children of Jones and Jenkins for a part of the time since the school in their district was closed, as well as other children residing in the neighborhood, at the expense of the school district, and entered into negotiations with them this year for the purpose of agreeing upon terms of transportation but failed to reach any agreement.

The question before the court for decision is, whether the school directors are required under the act to transport these children to the Welsh Hill school at the expense of the Clifford Township school district.

In the first place it may be well to refer to the act of assembly to ascertain what general powers are conferred upon school boards in conducting and maintaining the public school system as relating to schools of the fourth class.

Section 119 provides, "The several school districts in this Commonwealth, established by this act, shall be and hereby are vested, as bodies corporate, with all necessary powers to enable them to carry out the provisions of this act."

Section 401 provides, "That the school directors shall establish, equip, furnish and maintain a sufficient number of elementary schools in compliance with the provisions of the act, to educate every person, residing in such district, between the ages of six and twenty-one years, who may attend."

Section 402 provides for the levy and assessment of taxes necessary to provide and equip sufficient schools, "or to enable it to carry out any provision of this act."

We now pass to the sections of the act referring particularly to the transportation of school children.

Section 1404 provides, "Where any pupil in any school district in the Commonwealth resides one and one-half miles or more by the public road, from the nearest public elementary school in the district, such pupil unless

proper free transportation be furnished to a suitable school in the district, on obtaining the consent of the board of school directors thereof, may attend any public elementary school in another school district more convenient of access, without the consent of the board of school directors of the district wherein such pupil resides." Then follows a provision for the payment of tuition and school supplies and the further provision for students of one district attending school in an adjoining district in pursuance of an agreement entered into by the board of directors of both school districts. The section closes with the following paragraph: "The board of school directors of any school district in this Commonwealth may, out of the funds of the district, provide for the free transportation of any pupil to and from the public school."

Section 1406 provides, That the board of school directors of any school district in the Commonwealth, may, for reasons suggested in this section, close and consolidate any one or more of the public schools in its districts, and shall thereupon assign students attending schools in such consolidated districts to other schools. This section closes with the following language: Provided, "That in any district of the fourth class, pupils who belong to any such school closed, and reside one and one-half miles or more from the school to which they are assigned, shall be furnished proper transportation, at the expense of the district, to and from the school to which they are assigned."

Section 1408 provides for the method to be adopted in computing distances from the homes of pupils to the public schools, and the means of transportation that may be employed. This section also contains this significant provision: Provided, "That the free transportation of pupils, as required or authorized by this act, may be furnished by using electric railways and other public conveyances, when the total distance which any pupil must travel between his residence and the school, in addition

to such transportation, does not exceed one and one-half miles, and when stations or other proper shelters are provided for the use of such pupils when needed."

Section 1405, of the act should also be taken into consideration in a proper and legal determination of the question involved; it provides, "The board of school directors of every school district in this Commonwealth shall, for the purpose of designating the schools to be attended by the several pupils in said district, sub-divide the same in such manner that all the pupils in each school district, shall be assigned to, and reasonably accommodated in one of the public schools in said school district."

What the legislature intended is manifest when sections 1404, 1405, 1406 and 1408 are considered together. Section 1404 makes provision whereby the school directors may transport pupils residing one and one-half miles or more from a public school at the expense of the school district, except, where the pupil attends a school in an adjoining district with the consent and approval of the school directors in said adjoining districts. If, however, the school directors furnish free transportation in such instances, or offer to do so, then the pupil will be required to attend school in the district where he or she resides. The last clause contained in this section is evidently there for the purpose of enabling the board of school directors to comply with this provision to furnish free transportation. This section has reference to pupils residing a distance of one and one-half miles or more from any public school in said district, as the school districts existed and were sub-divided prior to the adoption of the Act of 1911, and authorized the school directors to furnish free transportation to such pupils but it is not made a compulsory duty. Section 1405 requires boards of school directors to assign several pupils in the school districts to certain schools and sub-divide the districts in such a manner that all pupils in the entire school district shall be assigned to and rea-

sonably accommodated in one of the public schools in said school district.   Section 1406 permits boards of school directors to close any schools and consolidate any school district as they existed at the time the Act of 1911 was adopted.   When this is done they must assign all pupils attending school in any district where the schools are closed to another district, and in schools of the fourth class, all students assigned to another district must be furnished free transportation to which school they are assigned when they reside one and one-half miles or more distant from such school, or they may be sent to an adjoining district to a nearer school if such an arrangement is consummated as is provided for in section 1404.   The sections 1404 and 1406 must be considered together in determining both the duties of the board of school directors and the rights and privileges of the school children.   The thought expressed in these sections seems to be that all pupils residing the designated distance from a public school should receive some assistance from the school directors to enable them to attend school.   In instances where the board of school directors have closed the school and have assigned pupils of the closed district to another, they must provide transportation; in all other instances they may provide transportation.   This interpretation of the sections of the act referred to is emphasized by section 1408, which refers to the free transportation of pupils as "authorized" and "required."

Section 2307, referring to the distribution of State appropriation, throws considerable light on this question. This section provides, "If any school district of the fourth class in the Commonwealth, since the passage of an Act of Assembly approved April twenty-fifth, 1901, has closed one or more of its public schools, or may hereafter close one or more of the same under the provisions of this act, and provides proper free transportation for part or all of the pupils, of such closed schools or school, to other public schools or school, as required

by this act, such district shall continue to receive from the State appropriation its proper share thereof for each such school thus closed, except that no minimum salary allowance shall be made thereof." Again in this section it is declared that school directors are required to furnish free transportation by the Act of 1911, where schools are closed, under the authority conferred upon school directors under section 1406.

This important question should not be determined simply upon the interpretation or relative meaning of the words "may" and "shall." These words in this act evidently were intelligently employed by the framers of the act, and it is the duty of courts to make effectual this wholesome provision rather than restrict same, when not in contravention with the settled principles of construction. ,

Two Common Pleas decisions are reported wherein the 1404th and 1406th have been construed. In the case of Franktown Township School Directors, 21 D: R., at page 603, it is held that section 1404 does not make mandatory the free transportation of school children, leaving the subject to the discretion of the school directors. This section is in harmony with our conclusion. In Commonwealth v. Ferguson Township School District, 40 C. C. Rep. at page 470, the learned judge in construing section 1406, held, that the transportation of pupils under the terms of the section, was likewise discretionary, and that "shall" should be read as meaning "may."

In West Fallowfield School District, 29 C. C. Rep., at page 600, and Directors of Pike Township, 15 D. R., at page 565, the court in construing the Act of June twenty-seventh, 1897, of similar import, held that the word "may" should be interpreted as "shall." It is equally consistent to hold that may is equivalent to shall in interpreting this act, as sections 1404 and 1406 are the only sections where the words are found having any significance as bearing on the question being considered.

Why substitute the meaning of one word for another when each may retain its well known and recognized meaning in the context in putting into effect the plain intendment of the statute? Section 1418 provides that pupils cannot be compelled to attend school under the compulsory features of the act, when they reside more than two miles from a school, unless free transportation is furnished. The legislature did not intend, and we do not decide that free transportation in all instances is made compulsory.

I fail to see in what manner such an interpretation of the act makes any distinction between pupils. The act refers and applies to all school children residing in any school district, but differently located at the time the Act of 1911 became operative. A number of pupils may reside one and one-half miles or more from a public school, when no change in the district by a consolidation of schools or otherwise has been made by the board of school directors, which produce this condition. Others may reside nearer a public school which is taken from them. This is a condition created by the action of the directors and not by any act or acts of the pupils themselves, or their parents. The school children residing in any district consolidated with another, must be assigned to another district, and when residing one and one-half miles or more distant from the school to which they are assigned, must be furnished free transportation to and from such school, in the manner designated by the act.

In Endlich on Interpretation of Statutes, section 728, it is said, "When the words admit of only one meaning the court is not at liberty to speculate on the intention of the legislature, or to construe an act according to its own notion of what ought to have been enacted. Nothing could be more dangerous than to make such considerations the ground of construing an enactment that is quite complete and unambiguous in itself. The business of the interpreter is not to conform the statute, it is to

interpret it.  The question for him is not what the legislature meant, but what its language means.  The intention of the legislature is to be ascertained by means of the words which it has used."

In Dwarris on Statutes, at page 144, it is said, "In the construction of a statute every part of it must be viewed in connection with the whole so as to make all its parts harmonize if practicable and give a sensible and intelligent effect to each.  It is not to·be presumed that the legislature intended any part of a statute to be without meaning."

In 35 Cyc., at page 1451, it is said, referring to the word "shall," "In common parlance, a term which it is said has always a compulsory meaning, and in its common and ordinary usage, unless accompanied by qualifying words which show a contrary intent, always refers to the future; but it may be used in the preterit present sense of 'must' of which it is a synonym.  As used in statutes the word is generally mandatory; although it is not always imperative but may be consistent with the exercise of discretion.  Thus it may be construed to mean 'may' when no right or benefit to anyone depends on its imperative use; when no advantage is lost, when no right is destroyed, when no benefit is sacrificed either to the public or any individual by giving it that construction."  The instances where the word "shall" may be used in a different sense is conclusive proof against such interpretation as used in this statute, for the reason that both public and individual rights will be sacrificed and prejudiced.

The word "shall" will not be construed "may," unless absolutely necessary to prevent irreparable mischief.

City Sewage Utilization Co. v. Davis, 8 Philadelphia Rep. 625.

It is the duty of courts so to construe statutes as to meet the mischief and to advance the remedy and not to violate fundamental principles, to bring sense out of the words used and not to bring a sense into them, to

give words a reasonable construction. Commonwealth v. Hufnal, 4 Pa. Superior Ct. Rept. 301.

The words "it shall be lawful," are construed to be im-perative where a power is conferred in the execution of which the public is interested.

Commonwealth, ex rel., v. Marshall, 3 W. N. C. at 182; Bell v. Caldwall, 107 Pa. 46.

Cases where the word "shall" is construed "may" in act of the legislature, generally occur when the statutes provide for legal procedure, or practice, or pertaining to duties of courts where discretion is vested in the courts in the performance of some judicial function.

Section 1408 clearly indicates that free transportation of all pupils residing more than one and one-half miles from a school is provided for. Under certain conditions the pupils may be required to walk one and one-half miles to meet a public conveyance when stations are maintained. They may use electric railways or other means of public transportation afforded; when schools are taken from pupils, free transportation is required, as to others it is authorized. An authority to do a thing implies a duty to do it, and this is particularly appli-cable to a body corporate acting in the capacity of pub-lic officials, charged with the important responsibility of conducting our public schools, and to provide for adequate and reasonable opportunities for the children of our Commonwealth to attend public school. The burden of attending schools is to be made as light as possible and children should be encouraged in their efforts to attend our public schools rather than dis-courage. Boards of school directors cannot close their eyes to this provision, and arbitrarily refuse to furnish free transportation to pupils such as is reasonable and just; and parents who unfortunately reside the desig-nated distance from a public school, not caused by the act of the directors in removing schools from them, are required to do their part also in securing the attendance of their children at the public schools. The act does not

mean that a public conveyance shall go to the home of every pupil. The parents must co-operate with the school directors in providing the best means of transportation possible under the existing circumstances and at the least expense. When school directors have endeavored to accomplish this, in good faith, having in mind the funds in their custody available for this purpose, they have performed their full duty in this regard.

Therefore, we hold, First, that when school directors exercise the authority vested in them by section 1406, to consolidate districts and close existing schools, they are required to furnish free transportation to pupils residing in such district, assigned to another district, when they reside one and one half-miles or more from the district to which they are assigned, and, Second, it is the duty of school directors to undertake the free transportation of all pupils residing in their school district, to the nearest or most convenient public school, who reside one and one-half miles or more distant from such school, and did so reside at the time the Act of 1911 became effective. This duty is directory and not compulsory and should be undertaken in good faith, in the exercise of a discretion vested in the school directors.

It must be admitted that this interpretation of the act is in accord with the language and thought expressed. It does not necessitate transportation or substitution of any sentences or words, and is in absolute harmony with all the sections of the act referring to the subject of free transportation. Any other construction obviously nullifies one very commendable feature of the statute in keeping with a purpose to extend educational opportunities rather than curtail them.

In reaching a proper conclusion in this case, it is essential to take into consideration only the conditions as they existed in respondent school district at the time the Act of 1911 was adopted. All other acts are repealed, many by specific mention and recital, and others, general, special and local, by a general repealing clause.

Authority for this proceeding is found in section 217, which permits the courts to remove school directors from office when they refuse or neglect to perform a duty imposed upon them, which by the provisions of the act is made mandatory. They are not to be subjected to removal for failure to properly exercise sound judgment, although they may be required to give proper consideration to all matters enjoined upon them as directed under the provisions of the act. However, in the performance of such duties courts will not dictate, suggest or interfere with the several boards of school directors; neither should they be removed from office for mistakes in judgment or errors committed in the performance of discretionary duties.

[The undisputed evidence in this case discloses the fact that the school district in which Jones and Jenkins reside was consolidated with an adjoining district, and the school closed, during the year 1901. This was done by another board of school directors. For this reason section 1406 of the act does not apply to this case.]  2. [The act is prospective and not retrospective in its application and no change affecting this school district has been made by the present board of school directors, or since the act was passed by the legislature. For this reason this petition must be dismissed, and the rule discharged.]  1.

A statute will not be construed to act retrospectively unless the intent be indicated in clear and positive language: White v. Crawford, 84 Pa. 433; Price v. Mott, 52 Pa. 315.

As the questions raised in this proceeding are of considerable importance, and involve principles of construction of general interest to the public, it seems fitting that the costs should be paid by the school district, and it is so ordered. Petitioners not to tax witness fees for their attendance at court.

*Error assigned* was order dismissing the petition.

73, (1915).]　　　　Opinion of the Court.

*John M. Kelly,* for appellant.

*Wm. D. B. Ainey,* for appellee.

OPINION BY ORLADY, J., April 11, 1915:

This is a proceeding instituted under Section 217, of the Act of May 18, 1911, known as the school code, to remove the school directors of a township, for failure to furnish transportation to pupils who resided more than one and one-half miles from the nearest school house. The case was fully heard in the court below on bill, answer and testimony. The legal questions involved have been carefully reviewed by Judge LITTLE, and we concur in the conclusions reached by him.

The undisputed evidence in the case discloses the fact that the school district in which the plaintiffs reside was consolidated with an adjoining school district during the year 1901, and by another board of school directors than these defendants. For this reason Section 1406, of the Act of May 18, 1911, P. L. 309, does not apply to the question presented by this record. This act is prospective in its application, and no change affecting this school district has been made by the present board, or since the Act of 1911 was passed.

The decree dismissing the petition and discharging the rule is affirmed.